UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
STEVEN LAWYER and WARREN ALLEN,           Civ. Action No.:
individually and on behalf of all others similarly situated,

                      Plaintiffs,

     -against-

BATHROOM BUDDY REMODELING INC.,
CUSTOM LEAD RESOURCES INC., ALLSTATE
HOME IMPROVEMENTS INC., ALLSTATE HOME
SERVICES INC., JOHN HUXTABLE, and
ALEXANDER KEYLES,

                   Defendants.
-----------------------------------------------------------------------X

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs, STEVEN LAWYER and WARREN ALLEN (hereinafter collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, as and for their Complaint against Defendants, BATHROOM BUDDY REMODELING INC., CUSTOM LEAD RESOURCES INC., ALLSTATE HOME IMPROVEMENTS INC., ALLSTATE HOME SERVICES INC., JOHN HUXTABLE, and ALEXANDER KEYLES (hereinafter collectively, "Defendants"), respectfully allege as follows:

## JURISDICTION AND VENUE

1.     Plaintiffs bring this action under the Fair Labor Standards Act (hereinafter, the "FLSA"), 29 U.S.C. §§ 201 *et seq.*, Articles 6 and 19 of the New York Labor Law (hereinafter, "NYLL"), and the New York Codes, Rules, and Regulations, Part 142 (hereinafter, the "Regulations"), to recover unpaid overtime compensation, unpaid minimum wages, unpaid regular wages, unpaid spread of hours, and for other relief.

2.      Jurisdiction over Plaintiffs' FLSA claims is based upon Section 216(b) of the FLSA, 29 U.S.C. § 216(b), and upon 28 U.S.C. § 1331.

3.      The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a) because these claims are so related to the FLSA claims that they form part of the same case or controversy.

4.      Venue in this district is appropriate under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## PARTIES

5.      Plaintiff Steven Lawyer (hereinafter, "Lawyer") is a resident of Farmingdale, New York.

6.      Plaintiff Warren Allen (hereinafter, "Allen") is a resident of Merrick, New York.

7.      Plaintiffs and other similarly situated employees were jointly employed by Defendants as construction laborers.

8.      Defendants are in the business of constructing, renovating, and remodeling residential bathrooms for Long Island homeowners.

9.      According to the New York State Department of State, Division of Corporations, Defendant Bathroom Buddy Remodeling Inc. (hereinafter, "BBR") is a New York domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York.

10.     Defendant BBR maintains a corporate office located at 738 Smithtown Bypass, Smithtown, New York 11787.

11.     Defendant BBR maintains a warehouse located at 646 Middle Country Road, St. James, New York 11780.

12.     At all relevant times, Defendant BBR maintained control, oversight, and direction over Plaintiffs and other similarly situated employees, including timekeeping, payroll, and other employment practices applied to them.

13.     According to the New York State Department of State, Division of Corporations, Defendant Custom Lead Resources Inc. (hereinafter, "CLR") is a New York domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York.

14.     According to the New York State Department of State, Division of Corporations, Defendant CLR maintains a Principle Executive Office located at 738 Smithtown Bypass, Suite 200, Smithtown, New York 11787.

15.     At all relevant times, Defendant CLR maintained control, oversight, and direction over Plaintiffs and other similarly situated employees, including timekeeping, payroll, and other employment practices applied to them.

16.     Upon information and belief, Defendant Allstate Home Improvements Inc. (hereinafter, "AHI") is a New York domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York.

17.     Upon information and belief, Defendant AHI maintains a corporate office located at 738 Smithtown Bypass, Smithtown, New York 11787.

18.     At all relevant times, Defendant AHI maintained control, oversight, and direction over Plaintiffs and other similarly situated employees, including timekeeping, payroll, and other employment practices applied to them.

19.     According to the New York State Department of State, Division of Corporations, Defendant Allstate Home Services Inc. (hereinafter, "AHS") is a New York domestic business corporation duly organized and existing under and by virtue of the laws of the State of New York.

20.     According to the New York State Department of State, Division of Corporations, Defendant AHS maintains a Principle Executive Office located at 738 Smithtown Bypass, Smithtown, New York 11787.

21.     At all relevant times, Defendant AHS maintained control, oversight, and direction over Plaintiffs and other similarly situated employees, including timekeeping, payroll, and other employment practices applied to them.

22.     Upon information and belief, Defendants BBR, CLR, AHI, AHS (hereinafter collectively, the "Corporate Defendants") were and are owned, operated, and controlled by Defendants John Huxtable (hereinafter, "Huxtable") and Alexander Keyles (hereinafter, "Keyles") (hereinafter collectively, the "Individual Defendants").

23.     Upon information and belief, the Corporate Defendants were and are part of a single integrated enterprise that jointly employed Plaintiffs and other similarly situated employees.

24.     Upon information and belief, the Corporate Defendants' operations were and are interrelated and unified.

25.     Upon information and belief, at all relevant times, the Corporate Defendants shared common management, were centrally controlled, and/or were owned by the Individual Defendants.

26.     Upon information and belief, at all relevant times, the Corporate Defendants shared employees, equipment, and supplies.

27.     Upon information and belief, Defendant Huxtable is a resident of the State of New York.

28.     According to Defendants' website, Defendant Huxtable is a founder of Defendants BBR and AHI.

4

29.     Upon information and belief, at all relevant times, Defendant Huxtable was an owner, corporate officer, director, and/or managing agent of each Corporate Defendant.

30.     According to the New York State Department of State, Division of Corporations, Defendant Huxtable is the Chief Executive Officer of Defendant AHS.

31.     According to the Nassau County Department of Consumer Affairs, Defendant Huxtable is the President of Defendants BBR, AHI, and CLR.

32.     Upon information and belief, at all relevant times, Defendant Huxtable exercised operational control over each Corporate Defendant, controlled significant business functions of each Corporate Defendant, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of each Corporate Defendant in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiffs and other similarly situated employees.

33.     At all relevant times, Defendant Huxtable participated in running the daily operations of each Corporate Defendant and their bathroom renovation business.

34.     At all relevant times, Defendant Huxtable participated in the management and supervision of Plaintiffs and other similarly situated employees and their work for Defendants.

35.     At all relevant times, Defendant Huxtable maintained control, oversight, and direction over Plaintiffs and other similarly situated employees, including timekeeping, payroll, and other employment practices applied to them.

36.     Upon information and belief, Defendant Keyles is a resident of the State of New York.

37.     According to Defendants' website, Defendant Keyles is a founder of Defendant BBR.

38.     Upon information and belief, at all relevant times, Defendant Keyles was an owner, corporate officer, director, and/or managing agent of each Corporate Defendant.

39.     According to the New York State Department of State, Division of Corporations, Defendant Keyles is the Chief Executive Officer of Defendant CLR.

40.     According to the Nassau County Department of Consumer Affairs, Defendant Keyles is the Secretary of Defendant BBR.

41.     Upon information and belief, at all relevant times, Defendant Keyles exercised operational control over each Corporate Defendant, controlled significant business functions of each Corporate Defendant, determined employee salaries, made hiring decisions, and acted on behalf of and in the interest of each Corporate Defendant in devising, directing, implementing, and supervising the wage and hour practices and policies relating to their employees, including Plaintiffs and other similarly situated employees.

42.     At all relevant times, Defendant Keyles participated in running the daily operations of each Corporate Defendant and their bathroom renovation business.

43.     At all relevant times, Defendant Keyles participated in the management and supervision of Plaintiffs and other similarly situated employees and their work for Defendants.

44.     At all relevant times, Defendant Huxtable maintained control, oversight, and direction over Plaintiffs and other similarly situated employees, including timekeeping, payroll, and other employment practices applied to them.

45.     Upon information and belief, at all times relevant, Defendants jointly employed Plaintiffs and all other similarly situated employees as construction laborers.

46.     Each Defendant had substantial control over Plaintiffs and other similarly situated employees' working conditions and over the unlawful policies and practices alleged herein.

47.    Defendants BBR, CLR, AHI, AHS, Huxtable, and Keyles are covered employers within the meaning of the FLSA and the NYLL, and, at all relevant times, jointly employed Plaintiffs and other similarly situated employees.

## FACTS RELATED TO NAMED PLAINTIFFS

48.    Plaintiff Lawyer was employed by Defendants from on or about November 14, 2018 until on or about April 26, 2019.

49.    At all times relevant to this action, Plaintiff Lawyer was employed as a construction laborer for the benefit of and at the direction of Defendants at their residential bathroom construction, renovation, and remodeling business.

50.    At all times relevant to this action, Plaintiff Lawyer's primary duty was to conduct the demolition of bathrooms and then install new bathroom fixtures, including bathtubs, showers, sinks, and toilets, in Defendants' customers' residential homes.

51.    Throughout Plaintiff Lawyer's employment, Defendants did not require Plaintiff Lawyer to sign in at the beginning of his shifts or to sign out at the end of his shifts, or to track his hours in any other manner.

52.    Upon information and belief, Defendants failed to keep and maintain time records for the time that Plaintiff Lawyer worked each day and week.

53.    Throughout Plaintiff Lawyer's employment, Plaintiff Lawyer personally maintained his own contemporaneous records of the times he began and ended his shifts each day.

54.    Throughout Plaintiff Lawyer's employment, Plaintiff Lawyer generally worked Monday through Friday and occasionally on Saturday and Sunday.

55.     Throughout Plaintiff Lawyer's employment, Plaintiff Lawyer began his shifts each day at about 7:00 a.m. and generally ended his shifts no earlier than 5:00 p.m., but typically worked until 7:00 or 8:00 p.m., and as late as 10:00 p.m. at times.

56.     Throughout Plaintiff Lawyer's employment, Plaintiff Lawyer typically worked at least fifty-five (55) hours per week, and as many as ninety-eight (98) hours per week at times.

57.     Throughout Plaintiff Lawyer's employment, Defendants paid Plaintiff Lawyer a daily rate of pay, regardless of how many hours Plaintiff Lawyer worked each day or each week.

58.     Throughout Plaintiff Lawyer's employment, despite agreeing to pay Plaintiff Lawyer a daily rate of pay, Defendants often failed to pay Plaintiff Lawyer the full daily rate to which he was entitled.

59.     Defendants generally paid Plaintiff Lawyer via check; however, at times, Defendants paid him in cash.

60.     Plaintiff Allen was employed by Defendants from on or about December 17, 2018 until on or about May 18, 2019.

61.     At all times relevant to this action, Plaintiff Allen was employed as a construction laborer for the benefit of and at the direction of Defendants at their residential bathroom construction, renovation, and remodeling business.

62.     At all times relevant to this action, Plaintiff Allen's primary duty was to conduct the demolition of bathrooms and then install new bathroom fixtures, including bathtubs, showers, sinks, and toilets, in Defendants' customers' residential homes.

63.     Throughout Plaintiff Allen's employment, Defendants did not require Plaintiff Allen to sign in at the beginning of his shifts or to sign out at the end of his shifts, or to track his hours in any other manner.

64.    Upon information and belief, Defendants failed to keep and maintain time records for the time that Plaintiff Allen worked each day and week.

65.    Throughout Plaintiff Allen's employment, Plaintiff Allen personally maintained his own contemporaneous records of the times he began and ended his shifts each day.

66.    Throughout Plaintiff Allen's employment, Plaintiff Allen generally worked Monday through Friday and occasionally on Saturday and Sunday.

67.    Throughout Plaintiff Allen's employment, Plaintiff Allen began his shifts each day at about 7:00 a.m. and generally ended his shifts no earlier than 5:00 p.m., but typically worked until 9:00 p.m., and as late as 1:00 a.m. at times.

68.    Throughout Plaintiff Allen's employment, Plaintiff Allen typically worked at least fifty-five (55) hours per week, and as many as ninety-eight (98) hours per week at times.

69.    Throughout Plaintiff Allen's employment, Defendants paid Plaintiff Allen a daily rate of pay, regardless of how many hours Plaintiff Allen worked each day or each week.

70.    Throughout Plaintiff Allen's employment, despite agreeing to pay Plaintiff Allen a daily rate of pay, Defendants often failed to pay Plaintiff Allen the full daily rate to which he was entitled.

71.    From on or about December 17, 2018 until on or about March 30, 2019, Defendants paid Plaintiff Allen one-hundred dollars ($100.00) per day.

72.    From on or about March 31, 2019 until on or about April 20, 2019, Defendants paid Plaintiff Allen one-hundred fifty dollars ($150.00) per day.

73.    Defendants generally paid Plaintiff Allen via check; however, at times, Defendants paid him in cash.

74.     Defendants failed to provide Plaintiffs with a notice and acknowledgement of pay rate and payday, or any other form of wage notice, at the time of their hiring, or at any other time thereafter, as required by NYLL § 195(1).

75.     Defendants failed to provide Plaintiffs with complete and accurate earnings statements, paystubs, cash receipts, or any other type of complete and accurate wage statement along with their weekly earnings, as required by NYLL § 195(3).

76.     During Plaintiffs' employment, Defendants did not pay Plaintiffs overtime compensation for any hours that they worked in excess of forty (40) hours each week.

77.     During Plaintiffs' employment, Defendants did not pay Plaintiffs at one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per week.

78.     During Plaintiffs' employment, Defendants regularly and routinely failed to pay Plaintiffs the daily rate of pay to which they were entitled.

79.     From on or about December 17, 2018 until on or about April 20, 2019, Defendants regularly failed to pay Plaintiff Allen the statutory minimum wage rate for all hours worked.

80.     From on or about December 17, 2018 until on or about April 20, 2019, Plaintiff Allen regularly worked in excess of ten (10) hours per day during weeks that he was paid at or below the statutory minimum wage rate.

81.     Despite regularly working in excess of ten (10) hours per day during weeks that he was paid at or below the statutory minimum wage rate, Defendants failed to pay Plaintiff Allen spread of hours compensation at a rate of one (1) extra hour of pay at the statutory minimum wage rate for each day that Plaintiff Allen worked in excess of ten (10) hours.

82.     Defendants Huxtable and Keyles participated in the decision to hire Plaintiffs.

83.     Defendants Huxtable and Keyles participated in the decision to fire Plaintiffs.

84.    Defendants Huxtable and Keyles participated in the supervision of Plaintiffs' duties each day.

85.    Defendants Huxtable and Keyles participated in deciding the job duties that Plaintiffs performed each day.

86.    Defendants Huxtable and Keyles participated in setting Plaintiffs' work schedule each week.

87.    Defendants Huxtable and Keyles participated in deciding the hours that Plaintiffs worked each day and week.

88.    Defendants Huxtable and Keyles participated in deciding the manner in which Plaintiffs were paid each week.

89.    Defendants Huxtable and Keyles ran the day-to-day operations of each Corporate Defendant during Plaintiffs' employment.

90.    Defendants managed Plaintiffs' employment, including the amount of overtime worked.

91.    Defendants dictated, controlled, and ratified the wage and hour and all related employee compensation policies.

92.    Defendants were aware of Plaintiffs' work hours but failed to pay them the full amount of overtime compensation to which they were entitled under the law.

93.    Defendants' failure to pay proper wages in a timely manner has been made without good faith, willfully, and with a reckless disregard for Plaintiffs' rights, and Plaintiffs have been damaged by such failures.

## FACTS RELATED TO SIMILARLY SITUATED EMPLOYEES

94.     Defendants jointly employ similarly situated laborers to perform the same duties and responsibilities as Named Plaintiffs herein.

95.     Upon information and belief, the similarly situated laborers regularly work in excess of forty (40) hours per week.

96.     Upon information and belief, Defendants pay the similarly situated laborers a daily rate of pay regardless of the number of hours that they work each week.

97.     Upon information and belief, Defendants do not pay the similarly situated laborers overtime compensation for those hours that they work in excess of forty (40) each week.

98.     Upon information and belief, Defendants do not pay the similarly situated laborers the full amount of their daily rates of pay each week.

99.     Upon information and belief, Defendants do not pay the similarly situated laborers the statutory minimum wage rate for all hours worked each week.

100.    Upon information and belief, Defendants do not pay the similarly situated laborers spread of hours compensation for those days in which they worked in excess of ten (10) hours per day during weeks that they are paid at or less than the statutory minimum wage rate.

101.    Upon information and belief, Defendants do not provide the similarly situated laborers with a notice and acknowledgement of pay rate and payday, or any other form of wage notice, at the time of their hiring, or at any other time thereafter, as required by NYLL § 195(1).

102.    Upon information and belief, Defendants do not provide the similarly situated laborers with complete and accurate earnings statements, paystubs, cash receipts, or any other type of complete and accurate wage statement along with their weekly earnings, as required by NYLL § 195(3).

103.    Upon information and belief, Defendants Huxtable and Keyles participate in the decision to hire and fire similarly situated laborers.

104.    Upon information and belief, Defendants Huxtable and Keyles participate in the supervision of similarly situated laborers' duties each day.

105.    Upon information and belief, Defendants Huxtable and Keyles participate in deciding the job duties that similarly situated laborers perform each day.

106.    Upon information and belief, Defendants Huxtable and Keyles participate in setting the similarly situated laborers' work schedule each week.

107.    Upon information and belief, Defendants Huxtable and Keyles participate in deciding the hours that similarly situated laborers work each day and week.

108.    Upon information and belief, Defendants Huxtable and Keyles participate in deciding the manner in which similarly situated laborers are paid each week.

109.    Defendants managed the similarly situated laborers' employment, including the amount of overtime worked.

110.    Defendants were aware of the similarly situated laborers' work hours but failed to pay them the full amount of overtime compensation to which they were entitled under the law.

111.    Defendants' failure to pay proper wages in a timely manner has been made without good faith, willfully, and with a reckless disregard for the similarly situated laborers' rights, and they have been damaged by such failures.

## COLLECTIVE ACTION ALLEGATIONS

112.    As this Complaint pertains to Count I herein, Plaintiffs, individually and on behalf of all similarly situated current and former employees of Defendants, bring this action as a

collective action under the FLSA to recover, *inter alia*, unpaid overtime compensation and liquidated damages owed to Plaintiffs and all other similarly situated employees.

113.    Defendants' failure to pay Plaintiffs and all other similarly situated employees overtime compensation has violated the FLSA.

114.    As a result of these unlawful practices, Plaintiffs and the similarly situated employees suffered a loss of wages.

115.    Plaintiffs seek to proceed as a collective action pursuant to 29 U.S.C. §216(b) on behalf of themselves and the following class of persons:

> All construction, renovation, and remodeling laborers who have worked for Defendants at any time from three (3) years prior to the filing of this action to the entry of judgment in this action who give their consent, in writing, to become party plaintiffs (hereinafter, the "FLSA Class").

116.    Plaintiffs and other members of the FLSA Class are similarly situated inasmuch as, *inter alia*, they were required to work in excess of forty (40) hours a week without being paid proper overtime compensation.

117.    Defendants have known that Plaintiffs and similarly situated employees have performed work that has required overtime compensation. Nonetheless, Defendants have operated under a scheme to deprive Plaintiffs and the other members of the FLSA Class of overtime compensation by failing to properly compensate them for all time worked.

118.    Defendants' conduct, as alleged herein, has been willful and has caused significant damage to Plaintiffs and the similarly situated employees.

## CLASS ACTION ALLEGATIONS

119.    As this Complaint pertains to Counts II through VII herein, Plaintiffs, individually and on behalf of all similarly situated current and former employees of Defendants, also seek to

maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), under the NYLL to recover, *inter alia*, unpaid overtime compensation, unpaid minimum wages, unpaid regular wages, unpaid spread of hours compensation, statutory damages for Defendants' wage notice and wage statement violations, liquidated damages, and CPLR interest owed to Plaintiffs and all other similarly situated employees.

120.    Fed. R. Civ. P. 23(b)(3) provides that a cause of action may be maintained as a class action if the following elements are met:

(a)    The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

(b)    There are questions of law or fact common to the class which predominate over law and questions affecting only individual members;

(c)    The claims or defenses of the representative parties are typical of the claims or defenses of the class;

(d)    The representative parties will fairly and adequately protect the interests of the class; and

(e)    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### Class Definitions

121.    Plaintiffs seek certification of a class consisting of the following individuals:

All construction, renovation, and remodeling laborers who have worked for Defendants at any time from six (6) years prior to the filing of this action to the entry of judgment in this action (hereinafter, the "New York Class").

**Numerosity**

122.    Plaintiffs satisfy the numerosity requirements as the proposed class is so numerous that joinder of all members is impracticable.

123.    The proposed class can be identified and located using the Defendants' payroll and personnel records. Class members may be informed of the pendency of this action by direct mail and/or published and broadcast notice.

**Common Questions of Fact or Law**

124.    There are questions of fact and law common to each class member which predominate over any questions affecting only individual members.

125.    With respect to considerations of consistency, economy, efficiency, fairness, and equity, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**Typicality**

126.    Plaintiffs' claims are typical of the claims of the class members. As a result of Defendants' unlawful conduct, Plaintiffs suffered similar injuries as those suffered by other members of the respective class they seek to represent.

**Adequacy**

127.    Plaintiffs are adequate representatives of the class they seek to represent because they are members of such class and their interests do not conflict with the interests of the members of the class they seek to represent. The interests of the class members will be fairly and adequately protected by Plaintiffs and their undersigned counsel. Plaintiffs have hired competent attorneys who are experienced in class action litigation of this type and who are committed to the prosecution of this Action.

**Superiority**

128.    A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

129.    Moreover, as the damages suffered by each class member may be relatively small, the expenses and burden of individual litigation would make it difficult for Plaintiffs to bring individual claims.

130.    The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201 *ET SEQ.***
**FAILURE TO COMPENSATE FOR OVERTIME**

131.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

132.    The FLSA regulates the payment of wages by employers whose employees are "engaged in commerce or engaged in the production of goods for commerce, or are employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. § 207(a)(1).

133.    Defendants were and are subject to the overtime pay requirements of the FLSA because the Corporate Defendants are enterprises engaged in commerce or in the production of goods for commerce.

134.    At all times relevant to this Complaint, each Corporate Defendant had, and continues to have, two or more employees handle goods or materials that have moved in interstate commerce, including Plaintiffs and the FLSA Class who have handled construction materials, supplies, and equipment that originated outside of the State of New York.

135.    Upon information and belief, the gross annual volume of sales made or business done by each Corporate Defendant for the years 2016, 2017, and 2018 was not less than $500,000.00.

136.    At all times relevant to this action, Plaintiffs and the FLSA Class were entitled to the rights, benefits, and protections granted by the FLSA, 29 U.S.C. § 207, *et seq*.

137.    Section 207(a)(1) of the FLSA states that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week.

138.    By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiffs and the FLSA Class overtime compensation as required by the FLSA.

139.    Section 13 of the FLSA, 29 U.S.C. § 213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA.

140.    However, none of the Section 13 exemptions apply to Plaintiffs and the FLSA Class because they have not met the requirements for coverage under the exemptions.

141.    Defendants have acted willfully and have either known that their conduct violated the FLSA or have shown reckless disregard for the matter of whether their conduct violated the FLSA.

142.    Defendants have not acted in good faith with respect to the conduct alleged herein.

143.    As a result of Defendants' violations of the FLSA, Plaintiffs and the FLSA Class have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW
## ARTICLE 6 AND 19
## FAILURE TO COMPENSATE FOR OVERTIME

144.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

145.    At all times relevant to this Action, Plaintiffs and the New York Class were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

146.    Under New York law, an employee must be paid overtime, equal to one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week in the manner and methods provided by the FLSA. 12 N.Y.C.R.R. §§ 142-2.2.

147.    By the above-alleged conduct, Defendants failed to pay Plaintiffs and the New York Class overtime compensation as required by the New York Labor Law and the Regulations pertaining thereto.

148.    By the above-alleged conduct, Defendants failed to pay Plaintiffs and the New York Class overtime compensation for the time periods in which they worked in excess of forty (40) hours a week for Defendants.

149.    Plaintiffs and the New York Class were not exempt from the overtime provisions

of the New York Labor Articles, because they did not meet the requirements for any of the reduced number of exemptions available under New York law.

150.    Defendants have acted willfully and have either known that their conduct violated the New York Labor Articles or have shown a reckless disregard for the matter of whether their conduct violated the New York Labor Articles.

151.    Defendants have not acted in good faith with respect to the conduct alleged herein.

152.    As a result of Defendants' violations of the NYLL, Plaintiffs and the New York Class have incurred harm and loss in an amount to be determined at trial, in addition to liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

**COUNT III**
**VIOLATION OF THE NEW YORK LABOR LAW**
**ARTICLE 19**
**FAILURE TO PAY MINIMUM WAGES**

153.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

154.    At all times relevant to this Action, Plaintiffs and the New York Class were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

155.    Defendants willfully failed to pay Plaintiffs and the New York Class at the applicable minimum hourly wage, in violation of the New York Minimum Wage Act, specifically New York Labor Law §652.

156.    As a result of Defendants' unlawful practices, Plaintiffs and the New York Class suffered a loss of wages.

157.    As a result of Defendants' violations of the NYLL, Plaintiffs and the New York Class have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, interest, and attorneys' fees and costs of litigation.

**COUNT IV**
**VIOLATION OF THE NEW YORK LABOR LAW**
**ARTICLES 6 AND 19**
**FAILURE TO PAY SPREAD OF HOURS COMPENSATION**

158.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

159.    In violation of the NYLL and the Regulations pertaining thereto, Defendants failed to pay Plaintiffs and the New York Class an additional hour of pay when the spread of hours between the beginning and end of Plaintiffs and the New York Class' workday exceeded ten (10) hours during a work week in which the individual was not paid above the statutory minimum wage rate.

160.    Such failures constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiffs and the New York Class' rights.

161.    As a result of Defendants' violation of the NYLL and the regulations pertaining thereto, Plaintiffs and the New York Class have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, interest, and attorneys' fees and costs of litigation.

**COUNT V**
**VIOLATION OF THE NEW YORK LABOR LAW**
**ARTICLE 6**
**FAILURE TO PAY WAGES**

162.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

163.    At all times relevant to this Action, Plaintiffs and the New York Class were paid a daily rate of pay to which they were and are entitled for performing work for and on behalf of Defendants.

164.    By the above-alleged conduct, Defendants regularly failed and refused to pay Plaintiffs and the New York Class the full amount of their daily rate of pay to which they were and are entitled.

165.    Defendants' failure to pay Plaintiffs and the New York Class the regular wages that they earned constituted outrageous conduct, made knowingly and willfully, or with a reckless indifference to Plaintiffs and the New York Class' rights.

166.    Defendants have acted willfully and have either known that their conduct violated the New York Labor Law or have shown a reckless disregard for the matter of whether their conduct violated the New York Labor Law. Defendants have not acted in good faith with respect to the conduct alleged herein.

167.    As a result of Defendants' violations of the NYLL and the Regulations promulgated therein, Plaintiffs and the New York Class have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, interest, and attorneys' fees and costs of litigation.

**COUNT VI**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 195(1)**
**FAILURE TO PROVIDE WAGE NOTICES**

168.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

169.    Defendants willfully failed to furnish Plaintiffs and the New York Class with wage notices during their employment, including the dates of their hiring, as required by NYLL § 195(1), in English or in the language identified by the employee as his/her primary language, which were to contain, among other things, the employee's rate or rates of pay and basis thereof; the regular pay day designated by Defendants as employers in accordance with NYLL § 191; the name of the

employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and the employee's regular hourly rates of pay and overtime rates of pay.

170.    Through their knowing and intentional failure to provide Plaintiffs and the New York Class with the wage notices required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq*. and the supporting New York Labor Articles.

171.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the New York Class are entitled to recover statutory penalties, together with costs and attorneys' fees provided by NYLL § 198(1-b).

**COUNT VII**
**VIOLATION OF THE NEW YORK LABOR LAW**
**NYLL SECTION 195(3)**
**<u>FAILURE TO PROVIDE WAGE STATEMENTS</u>**

172.    Plaintiffs reassert and reallege the allegations set forth in each of the above paragraphs as though fully set forth herein.

173.    Defendants willfully failed to provide Plaintiffs and the New York Class with complete, accurate, and written wage statements with their wages each week as required by NYLL § 195(3), which were to include, among other things, the dates of work covered by each payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; deductions; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular hours worked and the number of overtime hours worked.

174.    Through their knowing and intentional failure to provide Plaintiffs and the New York Class with wage statements required by the NYLL, Defendants have willfully violated NYLL §§ 190 *et seq.* and the supporting Regulations.

175.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the New York Class are entitled to recover statutory penalties, together with costs and attorneys' fees as provided by NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated employees, by and through their attorneys, Neil H. Greenberg & Associates, P.C., demand judgment against Defendants, jointly and severally and in favor of Plaintiffs and all other similarly situated employees for a sum that will properly, adequately, and completely compensate Plaintiffs and all other similarly situated employees, for the nature, extent, and duration of the damages, costs of this action, and as follows:

A.    Declare and find that Defendants committed one or more of the following acts:

1.    Violated provisions of the FLSA by failing to pay overtime compensation to Plaintiffs and other similarly situated employees;

2.    Willfully violated the provisions of the FLSA;

3.    Violated the provisions of the NYLL by failing to pay overtime compensation, regular wages, minimum wages, and spread of hours compensation to Plaintiffs and other similarly situated employees;

4.    Willfully violated the applicable provisions of the NYLL;

5.    Violated the provisions of the NYLL by failing to provide Plaintiffs and other similarly situated employees with wage notices and wage statements;

B.      Award compensatory damages, including all overtime compensation, regular wages, minimum wages, and spread of hours compensation owed, in an amount according to proof;

C.      Award liquidated damages under the NYLL, or alternatively the FLSA;

D.      Award statutory damages under the NYLL;

E.      Award interest on all NYLL overtime compensation, regular wages, minimum wages, and spread of hours compensation due accruing from the date such amounts were due;

F.      Award all costs and attorneys' fees incurred in prosecuting this action; and

G.      Provide such further relief as the Court deems just and equitable.

Dated:  Massapequa, New York
        June 19, 2019

Neil H. Greenberg, Esq.
Keith E. Williams, Esq.
Neil H. Greenberg & Associates, P.C.
*Attorneys for the Plaintiffs*
4242 Merrick Road
Massapequa, New York 11758
Tel: 516.228.5100
nhglaw@nhglaw.com
keith@nhglaw.com

## FAIR LABOR STANDARDS ACT CONSENT FORM

I, the undersigned, consent to be a party in Lawyer, Steven v. **BATHROOM**

**BUDDY REMODELING INC., ALLSTATE HOME SERVICES INC., JOHN**

**HUXTABLE and ALEX KEYLES** in order to seek redress for violations of the Fair

Labor Standards Act, pursuant to 29 U.S.C. section 216(b).

Dated: Massapequa, New York
     May 10, 2019

Mr. Steven Jacob Lawyer

## FAIR LABOR STANDARDS ACT CONSENT FORM

I, the undersigned, consent to be a party in Lawyer, Steven v. **BATHROOM**

**BUDDY REMODELING INC., ALLSTATE HOME SERVICES INC., JOHN**

**HUXTABLE and ALEX KEYLES** in order to seek redress for violations of the Fair

Labor Standards Act, pursuant to 29 U.S.C. section 216(b).

Dated: Massapequa, New York
        May 10, 2019

Mr. Warren Joseph Allen